IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANITA P. KING, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NO. 1:08-CV-03729-TWT-GGB |
| FULTON COUNTY, GEORGIA, | |
| Defendant. | |

**FINAL REPORT AND RECOMMENDATION**

This employment discrimination case is before the Court on Defendant Fulton County, Georgia's ("Defendant's") Motion for Summary Judgment (Doc. 39). Plaintiff Anita P. King ("Plaintiff") works for the Fulton County Juvenile Court as a Juvenile Probation Officer Supervisor. She brings claims against Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") for retaliation and sexual harassment. For the reasons below, I **RECOMMEND** that Defendant's Motion for Summary Judgment (Doc. 39) be **GRANTED.**

## I. Facts

Plaintiff has worked for the Fulton County Juvenile Court since May 1990 and for the last twelve years has held the position of Probation Supervisor in the Probation Division. (Deposition of Anita P. King ["Pl.'s Dep."] at 21, 23; Doc. 1 at ¶ 16; Doc. 8 at ¶ 16). During the relevant time period Plaintiff reported to the Deputy Chief

Probation Officer. (Deposition of Michael Wilson ["Wilson's Dep."] at 28). Jewel Morris was the Deputy Chief Probation Officer until 2008, when Samuel Washington replaced Morris. (Deposition of Careatha Daniels ["Daniels' Dep."] at 16-17). Plaintiff's second-level supervisor was Careatha Daniels, the Chief Probation Officer. (Id. at 17). Plaintiff's third-level supervisor was Michael Wilson, the Chief Administrative Officer. (Wilson's Dep. at 28).

Plaintiff engaged in protected activity on five occasions: (1) in 2001 she testified as a witness in a Title VII sexual harassment lawsuit against Defendant (Pl.'s Dep. at 9); (2) on November 6, 2006, she filed an internal complaint with Fulton County's Office of Equal Employment Opportunity ("OEEO") alleging that she was reassigned to the South Annex unit as a result of gender discrimination and retaliation (Daniels' Dep. at 136-38, Pl.'s Ex. 3); (3) on April 5, 2007, she sent a written complaint to her supervisor stating that she suffered from a hostile work environment and retaliation (Deposition of Jewel Morris ["Morris' Dep."] at 14-16, Pl.'s Ex. 41); (4) on August 7, 2007, she filed an EEOC charge against Defendant (Pl.'s Dep. at 157, Def. Ex. 2, Ex. A); and (5) on April 10, 2008, she filed an amended EEOC charge against Defendant (Id., Def.'s Ex. 2, Ex. B).

AO 72A
(Rev.8/82)

Plaintiff alleges that the following nine incidents constitute adverse employment actions:

(1) On November 6, 2006, before Plaintiff filed her OEEO complaint, Daniels reassigned her to the Probation Division's South Annex unit. (Id. at 34, 164, Pl's Ex. 3). The South Annex building was in poor condition, lacked office equipment, and had a noisy doorbell over Plaintiff's desk. (Id. at 62-63, 151-52).

(2) On February 9, 2007, Daniels issued Plaintiff a written reprimand for insubordination for failing to follow her supervisor's directives. (Daniels' Dep. at 54-55, Pl.'s Ex. 9).

(3) On March 29, 2007, Morris issued Plaintiff a warning letter for disregarding the chain of command. (Pl.'s Dep. at 168-70; Morris' Dep. at 12, Pl.'s Ex. 23).

(4) In June 2007, Daniels transferred a probation officer from the South Annex unit to the Northwest unit. (Pl.'s Dep. at 45; Daniels' Dep. at 100, Pl.'s Ex. 25). The Northwest unit had more probation officers and a smaller caseload than the South Annex unit. (Pl.'s Dep. at 115-16). However, the Northwest unit handled cases that were higher risk and required more supervision. (Doc. 39-4 at ¶ 5).

AO 72A
(Rev.8/82)

In addition, Defendant hired nine new probation officers in September 2007 but did not assign any of them to the South Annex unit. (Pl.'s Dep. at 44; Daniels' Dep. at 91-92).

(5) Plaintiff took several days of sick leave in April 2007. (Pl.'s Dep. at 88). On June 22, 2007, Wilson requested medical documentation in support of Plaintiff's sick leave to determine whether the leave should be deemed Family and Medical Leave Act ("FMLA") leave. Wilson told Plaintiff that failure to provide the documentation may result in disciplinary action. (Wilson's Dep. at 76-77, Pl.'s Ex. 54).

(6) Defendant evaluated Plaintiff's job performance on an annual basis. Plaintiff's immediate supervisor produced the initial draft of the evaluation, and the chief probation officer and the chief administrative officer reviewed the draft and approved it or requested changes. (Daniels' Dep. at 113). In his initial draft of Plaintiff's 2007 performance evaluation, Morris gave Plaintiff a rating of 3, which indicates "outstanding" performance. (Id. at 115, Pl.'s Ex. 30; Morris' Dep. at 22). Daniels notified Morris in July 2007 that the final draft of the evaluation must reflect the disciplinary actions Plaintiff received during the evaluation period. Daniels instructed Morris to lower Plaintiff's rating to 2, which indicates "acceptable" performance. (Daniels' Dep. at 116-119, Pl.'s Ex. 31; Morris' Dep. at 22-23).

AO 72A
(Rev.8/82)

Defendant's policy allows it to use performance evaluations to determine which employees it can promote without examination and which employees it can terminate in the event of a reduction in force. (Daniels' Dep. at 110-11, Pl.'s Ex. 28).

(7) On February 21, 2008, Defendant gave Plaintiff a mandatory referral to its Employee Assistance Program ("EAP") based on reports that Plaintiff "displayed volatile behavior on several occasions" and "failed to meet the objectives as a supervisor by ensuring daily tasks." (Wilson's Dep. at 98, 101, Pl.'s Ex. 64).

(8) On April 9, 2008, Defendant gave Plaintiff a written reprimand for insubordination. (Pl.'s Dep. at 200; Deposition of Samuel Washington ["Washington's Dep."] at 40-43, Pl.'s Ex. 36).

(9) On August 5, 2008, Defendant gave Plaintiff a rating of "acceptable" on her 2008 performance evaluation. (Pl.'s Dep. at 200; Washington's Dep. at 44-45, Pl.'s Ex. 40).

I discuss additional facts in context below.

## II. Summary Judgment Standard

The facts will be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004). Summary judgment is proper

when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant carries its burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. Id. at 252. The Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could return a verdict for the nonmoving party. Id. at 249; Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. Plaintiff's Retaliation Claim

Plaintiff brings a claim against Defendant under Title VII for unlawful retaliation. Title VII prohibits employers from taking adverse employment actions against employees in retaliation for their opposition to discriminatory practices prohibited by the statute. See Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008). Plaintiff establishes a prima facie case of retaliation by proving that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two. Id. If Plaintiff establishes a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse action. Id. If Defendant meets its burden, then Plaintiff must show that Defendant's proffered reason is a pretext for unlawful retaliation. Id. (requiring the plaintiff to present sufficient evidence to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action).

Plaintiff has established that she engaged in protected activity on five occasions: (1) in 2001 she testified as a witness in a Title VII sexual harassment lawsuit against

AO 72A
(Rev.8/82)

Defendant; (2) on November 6, 2007, she filed an OEEO complaint alleging that Defendant reassigned her to the South Annex unit as a result of gender discrimination and retaliation; (3) on April 10, 2007, she sent a written complaint to her supervisor stating that she suffered from a hostile work environment and retaliation; (4) on August 7, 2007, she filed an EEOC charge against Defendant; and (5) on April 10, 2008, she filed an amended EEOC charge against Defendant.

Plaintiff must next establish that she suffered an adverse employment action that was causally connected to one of her protected activities. For purposes of a retaliation claim, an adverse employment action is that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). A materially adverse effect is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (internal quotation omitted). "[T]rivial harms" and "petty slights" do not constitute adverse employment actions. Id.

In order to establish a causal connection, a plaintiff need only establish that the protected activity and the adverse action were not "wholly unrelated." Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). "We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker

AO 72A
(Rev.8/82)

became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999). The amount of time between the protected activity and the adverse action must be "very close." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). The Eleventh Circuit has held that a three-month period between protected activity and an adverse employment action, standing alone, is not sufficiently close for a factfinder to infer a causal connection. Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004).

Plaintiff argues that over a twenty-one month period she suffered nine different adverse employment actions: (1) her November 6, 2006 reassignment to the South Annex unit; (2) the February 9, 2007, written reprimand for insubordination; (3) the March 29, 2007, warning letter for disregarding the chain of command; (4) the June 2007 transfer of a South Annex unit probation officer; (5) the June 22, 2007, request for medical documentation in support of her sick leave to determine whether the leave should be deemed FMLA leave; (6) the July 2007 reduction of the rating in her performance evaluation from "outstanding" to "acceptable"; (7) the February 21, 2008, mandatory referral to the EAP; (8) the April 9, 2008, written reprimand for

AO 72A
(Rev.8/82)

insubordination; and (9) the August 2008 performance evaluation rating of "acceptable."

I consider below each of these alleged adverse employment actions individually, and in combination.

(1) Plaintiff's Reassignment to South Annex

Plaintiff argues that her transfer to the South Annex unit was an adverse employment action because of the poor condition of the South Annex building. Plaintiff states that "[i]t was well known . . . that individuals were sent to the South Annex unit in isolation as a form of punishment for complaining about Defendant's employment practices." (Doc. 43 at 7). A complaint about "employment practices," however, is not necessarily protected activity under Title VII. See 42 U.S.C. § 2000e-2(a) (prohibiting only discrimination that is based on race, color, religion, sex, or national origin). Further, the undesirable conditions at the South Annex affected all employees who worked there. (Doc. 43-3 at ¶ 4). Plaintiff has not shown that the employees in her unit had engaged in protected activity. For these reasons, a reasonable factfinder could not find that Plaintiff's reassignment was an adverse employment action.

AO 72A
(Rev.8/82)

Even if a reasonable factfinder could find that Plaintiff's reassignment was an adverse employment action, no causal connection exists when an employee engages in protected activity after the adverse employment action. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000). Plaintiff's OEEO complaint occurred after her reassignment to the South Annex unit. Further, she had not engaged in any protected activity in the six years prior to her reassignment. Plaintiff does not explain why Defendant chose to retaliate against her at that time, more than six years after her most recent protected activity. She also does not suggest why Daniels, who was not involved in the Title VII sexual harassment lawsuit for which Plaintiff testified in 2001, would have an incentive to retaliate against her. Thus, a reasonable factfinder could not find a causal connection between the reassignment and her protected activity.

(2) Written Reprimand for Insubordination

Defendant gave Plaintiff a written reprimand for insubordination on February 9, 2007, more than three months after her OEEO complaint about her transfer to the South Annex unit. She points to no other evidence that this written reprimand was retaliatory. The temporal proximity alone is insufficient for a reasonable factfinder to find a causal connection between the reprimand and her protected activity.

AO 72A
(Rev.8/82)

(3) Warning Letter for Disregarding Chain of Command

Defendant issued Plaintiff a letter of warning for disregarding the chain of command on March 29, 2007, more than four months after her OEEO complaint. Again, Plaintiff points to no other evidence that the warning letter was retaliatory. For these reasons, a reasonable factfinder could not find a causal connection between the warning letter and her protected activity.

(4) Assignment of Probation Officers to Other Units

In June 2007, Defendant transferred a probation officer from Plaintiff's unit to another unit. In addition, Defendant hired nine new probation officers in September 2007 and did not assign any of them to Plaintiff's unit. For a plaintiff to establish that she suffered an adverse employment action, she must show that the employer directed an adverse employment action against her, not another employee. Entrekin v. City of Panama City, Florida, No. 09-14332, 2010 WL 1709755, at *6 (11th Cir. Apr. 29, 2010).

Plaintiff argues that, in this case, the assignment of employees to other units was an adverse employment action directed against her because the assignments forced her to work longer hours. However, the assignment of job duties that are part of the normal duties for a position is not an adverse action. Saunders v. Emory Healthcare, Inc., 360



AO 72A
(Rev.8/82)

F. App'x 110, 116 (11th Cir. 2010). Although Plaintiff has shown that as a result of the assignments she worked longer hours than she otherwise would have worked, she has not shown that these longer hours deviated from the normal duties of her position. For example, she has not shown that she worked longer hours than supervisors of other units. She did present evidence regarding the caseloads of other units, but a unit's caseload is not indicative of the number of hours its employees worked because the other units handled cases that were more labor intensive. For these reasons, a reasonable factfinder could not find that the assignment of employees to other units was an adverse employment action against Plaintiff.

(5) Request for FMLA Documentation

On June 22, 2007, Defendant requested that Plaintiff submit medical documentation regarding her sick leave so that it could determine whether the leave should be deemed FMLA leave. The burden on Plaintiff from this request was a mere "trivial harm" and "petty slight" that would not deter a reasonable worker from making or supporting a charge of discrimination. See Burlington, 548 U.S. at 68. In fact, Plaintiff subsequently filed an EEOC charge and amended charge. Because the request for medical documentation was a "trivial harm,"a reasonable factfinder could not find that it was an adverse employment action.

AO 72A
(Rev.8/82)

(6) Reduced Rating in 2007 Performance Evaluation

In July 2007, Defendant lowered Plaintiff's rating on her 2007 performance evaluation from "outstanding" to "acceptable." Plaintiff presents no evidence that – given the disciplinary actions against her during the evaluation period – her performance did not warrant a rating of "acceptable." See Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1240 (11th Cir. 2001) ("Employer criticism . . . is an ordinary and appropriate feature of the workplace."). In addition, a rating of "acceptable" on a performance evaluation is not a poor evaluation. Lawrence v. Wal-Mart Stores, Inc., 236 F. Supp.2d 1314, 1332 (M.D. Fla. 2002) ("A review of 'meets expectations' is hardly a poor evaluation.").

Even if a rating of "acceptable" were a poor evaluation, a poor performance evaluation rarely constitutes an adverse employment action. Davis, 245 F.3d at 1240. Plaintiff argues that this is the rare instance in which a performance evaluation constitutes an adverse employment action because Defendant's policy allows it to use the results of performance evaluations in making certain employment decisions. However, a policy does not constitute an adverse employment action if the employer does not enforce it, even if the enforcement of the policy would harm the plaintiff. Entrekin, 2010 WL 1709755 at *6 (finding that plaintiff "suffered no harm with respect

AO 72A
(Rev.8/82)

to the City's car pool policy, because she admitted at her deposition that the policy was never enforced against her"). Plaintiff has not established that Defendant actually considered her 2007 performance evaluation when making an employment decision. Thus, Defendant has not enforced against Plaintiff its policy allowing it to use the results of performance evaluations in making certain employment decisions. Accordingly, a reasonable factfinder could not find that the reduction of Plaintiff's rating in her 2007 performance evaluation constitutes an adverse employment action.

(7-9) Referral to EAP, Written Reprimand for Insubordination, and 2008 Performance Evaluation

Defendant gave Plaintiff a mandatory referral to Defendant's EAP on February 21, 2008; a written reprimand for insubordination on April 9, 2008; and a rating on her 2008 performance evaluation of "acceptable" in August 2008. Plaintiff had not engaged in protected activity in the three months prior to these incidents. A reasonable factfinder could therefore not find a causal connection between these incidents and her protected activities.

Finally, Plaintiff cites Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453 (11th Cir. 1998) for the proposition that a series of incidents involving reprimands and other negative treatment of an employee who had filed an EEOC charge could, when taken together, constitute an adverse employment action. (See Doc. 43 at 6). Beyond the

citation, Plaintiff does not elaborate on how the incidents of which she complains, when taken together, constitute an adverse employment action. Wideman is distinguishable because the conduct in that case was much more severe and causally connected to her protected activity than the alleged harassment in this case. The retaliatory conduct in Wideman began the day after the plaintiff informed the defendant of her protected activity and included a suspension and "threat[] to shoot her in the head." 141 F.3d at 1455. The court recognized that "there is some threshold level of substantiality that must be met for unlawful discrimination to be cognizable under the anti-retaliation clause," but declined to define that threshold level. Id. at 1456. The Supreme Court later clarified the threshold level of substantiality in Burlington N. & Santa Fe Ry. Co. v. White as conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. 53, 68 (2006).

As explained above, the alleged retaliation in this case began more than three months after Plaintiff's OEEO complaint. Further, much of the conduct was either not directed at Plaintiff or involved mere "trivial harms." Thus, even viewing the conduct collectively, Plaintiff did not suffer harm causally connected to her protected activity that might well have dissuaded a reasonable worker from making or supporting a charge

AO 72A
(Rev.8/82)

of discrimination. Accordingly, a reasonable factfinder could not find that the conduct as a whole constitutes an adverse employment action.

For the above reasons, a reasonable factfinder could not find that Plaintiff established a prima facie case of unlawful retaliation. I therefore do not reach Defendant's argument that Plaintiff is unable to establish that its proffered reasons for the employment actions are pretexts for unlawful retaliation.

Because a reasonable factfinder could not find that Plaintiff established a prima facie case of unlawful retaliation, I **RECOMMEND** that Defendant's Motion for Summary Judgment (Doc. 39) be **GRANTED** with respect to Plaintiff's retaliation claim.

## IV. Plaintiff's Sexual Harassment Claim

Plaintiff also brings a claim against Defendant for sexual harassment.[1] Title VII prohibits sexual harassment that is sufficiently severe and pervasive to alter the terms

---

[1]Plaintiff describes the second count in her Complaint as "Hostile Work Environment (Title VII)." ( Doc. 1 at 15). Plaintiff alleges in that count that she "is a member of a protected class (African-American/Female)." (Id. at ¶ 55). She also alleges that Defendant subjected her to unwelcome harassment because of her prior EEO complaint. (Id. at ¶ 56). Although it is unclear from Plaintiff's Complaint on what basis/bases Plaintiff brings her hostile work environment claim, she clarifies in her summary judgment response brief that she bases her hostile work environment claim only on her sex. (Doc. 43 at 24-25).

AO 72A
(Rev.8/82)

and conditions of employment and alter the victim's working environment. Hulsey v. Pride Rests., 367 F.3d 1238, 1244 (11th Cir. 2004). To establish a claim of sexual harassment, Plaintiff must show that (1) she belongs to a protected group; (2) she has suffered unwelcome harassment; (3) the harassment was based on her protected characteristic; (4) the harassment was severe or pervasive; and (5) a basis for holding the employer liable exists. Id. A plaintiff may base her sexual harassment claim on conduct that is not explicitly of a sexual nature. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."). Plaintiff must show that Defendant directed the mistreatment at her because of her sex. Id. at 81 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 24 (1993)).

Plaintiff alleges that the harassment consisted of (1) unjust writeups for insubordination and disregarding the chain of command, (2) threats of disciplinary action if she did not submit medical documentation in support of her sick leave so that Defendant could determine if the leave should be deemed FMLA leave, (3) a referral to mandatory EAP counseling, and (4) unfavorable ratings on performance reviews in 2007 and 2008.

The conduct of which Plaintiff complains does not appear on its face to be based on Plaintiff's sex. Plaintiff contends that this facially-neutral conduct is nevertheless based on her sex because the decisionmakers are male. The mere fact that a member of the other sex made a disciplinary decision does not mean that the motivation for the decision was sex. See McCray v. Wal-Mart Stores, Inc., No. 09-11939, 2010 WL 1784247, at *3 (11th Cir. May 5, 2010) (finding that African-American plaintiff who alleged discrimination by white supervisors "failed to point to any evidence indicating these events were motivated by her race").

Plaintiff also contends that the conduct is based on her sex because Defendant could not name any male employee who it treated similarly under the same circumstances. Notably, neither party presented evidence of any other employee who faced the same circumstances. Although evidence that Defendant treated a male employee similarly under the same circumstances would support Defendant's argument, the absence of any employee who faced the same circumstances does not establish that the conduct was based on Plaintiff's sex.

Plaintiff presents no further arguments that the conduct was based on her sex. Thus, a reasonable factfinder could not find that Defendant based its conduct on Plaintiff's sex.

AO 72A
(Rev.8/82)

Defendant also argues that Plaintiff's sexual harassment claim fails because she did not exhaust her administrative remedies; establish that the harassment was severe or pervasive; and show that Defendant's legitimate, nondiscriminatory reasons for the decisions are pretexts for discrimination. Because a reasonable factfinder could not find that Defendant's conduct was based on Plaintiff's sex, I do not reach Defendant's additional arguments.

For the above reasons, I **RECOMMEND** that Defendant's Motion for Summary Judgment (Doc. 39) be **GRANTED** with respect to Plaintiff's sexual harassment claim.

## V. Conclusion

For the above reasons, I **RECOMMEND** that Defendant's Motion for Summary Judgment (Doc. 39) be **GRANTED**.

IT IS SO RECOMMENDED this 28th day of June, 2010.

GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)